[No. 4823.  Decided November 30, 1903.]

LUCY H. A. BROWN, *Appellant*, v. EDWARD F. GILLETT,
*Respondent.*[1]

APPEAL—REVIEW—OBJECTIONS TO TESTIMONY.  Error cannot be predicated upon the admission of testimony when no sufficient objection was made thereto below.

SAME—REQUESTED INSTRUCTIONS.  Error cannot be predicated upon the refusal to give requested instructions, where they are not contained in the record.

EVIDENCE—IMPEACHING—LAYING FOUNDATION.  Where upon an issue as to fraudulent representations as to the value of a mining claim, a witness testified that it was not such as was represented, evidence of his previous statement that it was a good claim is impeaching testimony, and error requiring a reversal, where no foundation therefor had been laid by calling his attention thereto.

SAME—RULE APPLIES TO DEPOSITIONS.  The rule that a witness may not be impeached by previous contradictory statements, unless the foundation therefore has been laid, applies to a witness whose testimony is taken by deposition.

APPEAL—ADMISSION OF IMPEACHING TESTIMONY—PREJUDICIAL ERROR.  Error in the introduction of impeaching testimony without proper foundation, upon the point directly in issue, is presumed prejudicial since it cannot affirmatively appear what would otherwise have been the verdict.

RESCISSION—NECESSITY OF TENDER—WAIVER BY FAILING TO DEMUR.  In an action in the nature of rescission of a contract to recover money paid on fraudulent representations, the objection that the plaintiff had not offered to surrender a mortgage given under the contract should be taken by demurrer to the complaint, and is too late after trial and verdict on the merits.

Appeal from a judgment of the superior court for King county, Albertson, J., entered May 14, 1903, upon the verdict of a jury rendered in favor of the defendant, in an action in the nature of rescission to recover money paid on representations respecting a mining claim.  Reversed.

[1]Reported in 74 Pac. 386.

*Byers & Byers,* for appellant.    It was error to allow witness Glines to be impeached without laying the foundation therefor.    *Van Ness v. Bush,* 22 How. Prac. 481; *Muller v. I X L Lime Co.* (Cal.) 42 Pac. 1068; *Fitch v. Kennard,* 19 N. Y. Supp. 468; *State v. Hunsaker,* 16 Ore. 497, 19 Pac. 605; *Ryan v. People,* 21 Colo. 119, 40 Pac. 775; *Robinson v. Savage* (Ill.), 15 N. E. 850; *Kreuger v. Sylvester,* 100 Iowa 647, 69 N. W. 1059; *Connell v. McNett,* 109 Mich. 329, 67 N. W. 344; *Wyler v. Rothschild,* 53 Neb. 566, 74 N. W. 41; *McCulloch v. Dobson* (N. Y.), 30 N. E. 641; *Stone v. Northwestern Sleigh Co.,* 70 Wis. 585, 36 N. W. 248; *Conrad v. Griffey,* 16 How. 38, 14 L. Ed. 835; *Allen v. Swerdfiger,* 14 Wash. 461, 44 Pac. 894.

*Greene & Griffiths,* for respondent.    The rule that a foundation must be laid for impeaching testimony is not universal.    *Tucker v. Welsh,* 17 Mass. 160, 9 Am. Dec. 137; *Hedge v. Clapp,* 22 Conn. 262, 58 Am. Dec. 424; *Ware v. Ware,* 8 Greenleaf (Me.) 42; *Mattox v. United States,* 156 U. S. 253, 15 Sup. Ct. 337 (minority opinion).    The rule is relaxed as to depositions.    *Downer v. Dana,* 19 Vt. 338; *Fletcher v. Henley,* 13 La. An. 191; *Roberts v. Collins,* 6 Ired. 223; *Hooper v. Moore,* 3 Jones (N. C.) 428.    The practice is under the control of the trial court.    *Sloan v. New York C. R. Co.,* 45 N. Y. 125.

DUNBAR, J.—The complaint in this case alleges, in substance, that in April, 1901, the plaintiff obtained a loan from the defendant of $500 on a fraudulent representation that a placer mining claim, which he had in Alaska, was abundant security for the said sum, and that the claim was a developed claim and was producing gold and would produce gold in large amounts; that said representations were

false and fraudulent, and were known by the defendant to be false and fraudulent when he made them; that plaintiff did not know at said time, and has only recently learned, that such representations were false and fraudulent, and that the mortgage security given by defendant to plaintiff was worthless and of no value whatever; and judgment is demanded for the sum of $500, with interest at the legal rate from the date at which the money was obtained. The answer admits the obtaining of the $500, but denies the allegations in relation to false and fraudulent representations, so that the question at issue in the trial of the cause was whether or not false and fraudulent representations had been made by the defendant to the plaintiff. The cause was tried to a jury, and a verdict rendered in favor of defendant, from which judgment this appeal is taken.

The allegations are, (1) that the court erred in admitting evidence which showed, and tended to show, nothing more than that the claim mentioned had a speculative value; (2) that the court erred in admitting testimony as to the value of the claim of witnesses whose opinions were based on little or no knowledge, and in failing to instruct the jury as to the slight value of such testimony; (3) that the court erred in giving its instructions to the jury, in that the court wholly failed to instruct the jury that they could in any event find a verdict for the plaintiff; (4) that the court erred in refusing to give instructions requested by appellant to the effect that, if they believed from the evidence that the respondent made the representations alleged to have been made to the appellant, and that these representations were not true, their verdict should be for the appellant, and that it was not necessary for them to find that the respondent knew that the representations were

false, and that, if they believed that any witness had wilfully testified falsely to any material fact, then they were at liberty to disregard the entire testimony of that witness; (5) that the court erred in permitting the respondent to impeach appellant's witness Glines, because the respondent had not on the examination of Glines laid any foundation for such impeachment.

It seems from the record that no sufficient objection was made to the introduction of the evidence complained of in the first and second assignments, if, indeed, it can be gathered from the brief what such evidence was. So far as the third assignment is concerned, the instructions of the court on the whole case seem to be unobjectionable. The fourth assignment—that the court erred in refusing to give instructions requested by the appellant to the effect mentioned above—is not presented by the record. After the instructions of the court and the objections by the appellant which we have mentioned, appears the following: "Mr. Byers: Plaintiff excepts to the refusal of the court to give the instructions requested by the plaintiff as requested." But the record does not contain any requested instructions such as are set forth in appellant's brief under the fourth assignment. If any such instructions were asked by the appellant, he has failed to incorporate them in the record, and they are therefore not before this court for examination.

We think, however, that appellant's fifth contention—that the court erred in permitting respondent to impeach appellant's witness Glines without laying proper foundation for such impeachment—must be sustained. The witness Glines, in his deposition, had stated that the claim in dispute was not such a claim as had been represented by the respondent, and was valueless and worthless; and wit-

ness Lang, introduced by the respondent, was allowed to testify, over the objection of the appellant, that in a conversation he had with witness Glines, Glines had stated that the claim was a good claim.    This was without doubt impeaching testimony, and was introduced for the purpose of impeaching the witness Glines.    The rule is well established that, before a witness can be impeached by showing that he has made a statement different from the statement he makes in court, his attention must be called to the statement as nearly as possible by indicating to him the time and place and other circumstances tending to direct his attention to the testimony which is to be contradicted. The general rule is thus laid down by Wharton's Law of Evidence (3d ed.), § 555:

. "When it is thus intended to discredit a witness by showing that he has on former occasions made statements inconsistent with those made on trial, it is usually requisite to ask him, on cross-examination, whether he has not made such prior contradictory statements, specifying in the question the persons to whom the alleged contradictory statements were made, and as far as possible the time and place.    Only upon a denial, direct or qualified, by the witness, that such statements were so made, can proof of them be offered, as the object of the inquiry is to enable the witness to recall the incidents, and to explain in advance the inconsistency, if there be such."

In *Mutter v. I. X. L. Lime Co.* (Cal.), 42 Pac. 1068, it was held that where the defense in an action for cutting wood was that plaintiff agreed to pile it for measurement, but failed to do so, and defendant's foreman testified that the wood was not in condition to be measured, it was error to permit a witness called in rebuttal to testify that he had a conversation with said foreman after the suit had been commenced, and that said foreman told the witness that the said wood could be easily measured; as, if said testimony

was intended to impeach said foreman's testimony, it was improper because no foundation had been laid.    But it is unnecessary to accumulate authorities on this subject, for it seems to be the universal rule, both in England and America, for the reason, often stated, that it would be an injustice to the witness to admit testimony concerning alleged contradictory or inconsistent statements without calling his attention to the same, so that he might explain away the seeming inconsistencies.

It is contended, however, by the respondent that this rule does not apply in cases where the witness' testimony was taken in the form of depositions, and there are a few cases to that effect, though when examined they are generally found to be surrounded by circumstances which seem in the minds of the court to necessitate a modification of the rule.    In one of the cases cited by respondent, viz., *Roberts v. Collins,* 6 Ired. (28 N. C.) 223, in a very short opinion, the rule is laid down, after the admission of the general rule which we have just discussed, that an exception to such rule was necessitated in that case because the declarations offered in evidence to contradict the witness were made after his first deposition was taken—a proposition which is not involved in this case, although we doubt the soundness of the argument of the court in that case that it could not be required of the defendant to take the deposition of the witness over again.  A witness who gives his testimony by deposition ought to be protected in all respects as well as a witness who testifies orally, and while it may work a hardship to the opposing party to have a second deposition taken, yet that is his misfortune, and the inconvenience ought not to be offset against the recognized necessity for the rule in the first instance.

In *Downer v. Dana,* 19 Vt. 338, it was squarely held that the established rule that testimony as to the previous

declarations of a witness produced upon the stand, and offered for the purpose of impeaching him, could not be received unless an opportunity were first afforded the witness, whose testimony it was proposed to impeach, to explain or qualify the imputed declarations; yet this rule had no proper application to the testimony in the form of depositions. In the case of *Fletcher v. Henley,* 13 La. An. 191, cited by respondent, the impeaching testimony was admitted where no foundation had been laid by reason of the impossibility shown to lay the foundation, it having been shown that a commission to take the deposition was issued a second time with the interrogatories annexed, requesting the witness to state whether he had not made the statements to the persons named, who afterwards testified in open court, and it being found impossible to obtain the second deposition from the witness.

It is also contended by the respondent that this is a matter which is largely within the discretion of the court, and *Sloan v. New York Central R. Co.,* 45 N. Y. 125, is cited to sustain this contention; but an investigation of the case shows that it was simply the form of the questions which was involved, and that no discretion was vested in the court to do away altogether with the preliminary questions. After announcing the rule as stated by us above, in the course of its remarks the court said:

"To lay the foundation for contradiction, it is necessary to ask the witness specifically whether he has made such statements; and the usual and most accurate mode of examining the contradicting witness is to ask the precise question put to the principal witness. Otherwise, hearsay evidence, not strictly contradictory, might be introduced, to the injury of the parties, and in violation of legal rules. But the practice upon this subject must be, to some extent, under the control and discretion of the court. It is important that the jury should understand that such

evidence is collateral, and not evidence in chief; and the witness sought thus to be impeached should have an opportunity of making explanation, in order that it may be seen whether there is a serious conflict, or only a misunderstanding or misapprehension; and for the purpose of eliciting the real truth, the court may vary the strict course of examination."

The overwhelming weight of authority, as well as the better reasoning, is opposed to the admission of impeaching testimony without notice. Rice on Evidence, p. 618, quotes the marginal note from *Kimball v. Davis,* 19 Wend. 437, as follows:

"The declaration of witnesses whose testimony has been taken under a commission, made subsequent to the taking of their testimony, contradicting or invalidating their testimony as contained in the depositions is inadmissible in evidence, if objected to. The only way for a party to avail himself of such declarations is to sue out a second commission. Such evidence is always inadmissible until the witness whose testimony is thus sought to be impeached has been examined upon the point, and his attention particularly directed to the circumstances of the transaction, so as to furnish him an opportunity for explanation or exculpation."

The author quotes also from Walworth, Ch., in the court of errors, (*Brown v. Kimball,* 25 Wend. 259) where the chancellor said:

"I concur with the supreme court in the opinion that it was improper to give the declarations of the witnesses in evidence, without giving them, in the first place, an opportunity to explain; and that the fact that the witnesses had been examined under a commission, did not prevent the operation of the principle upon which the rule is founded."

Excerpts to the same effect from 3 Starkie, Evidence, 1741; *Howell v. Reynolds,* 12 Ala. 128; and many other cases and authorities, are given to sustain the rule. *Van*

*Ness v. Bush,* 22 How. Prac. 481, lays down the same rule, and quotes approvingly the case of *Brown v. Kimball, supra.* In fact it seems to us that the overwhelming weight of authority makes no distinction between testimony that is taken orally and that which is taken by deposition, and that the court erred in admitting this impeaching testimony over the appellant's objection.

It is contended by respondent, however, that the tendency of the appellate court of this state is not to extend the application of the statute which forbids it to reverse a judgment for any errors which do not affect the substantial rights of the parties. But this court has repeatedly laid down the rule that an error will be presumed to be prejudicial unless it affirmatively appears from the whole case that it was error without prejudice, and we are not able to say that such was the fact in the case at bar. The question at issue, and which was solely a question for the determination of the jury, was the fraudulent representations made concerning the value of the mining claim, and the testimony impeached was testimony directly with reference to that question. What conclusion the jury would have come to in regard to the value of the claim if the witness had not been impeached, we are unable to determine.

It is also suggested by counsel for respondent that this case was in the nature of a rescission of a contract, and that it was the duty of the appellant, under the allegations of the complaint, to offer to deliver up the mortgage. But this is a question which would more properly have been raised by a demurrer to the complaint, when, if it had been held that such tender was necessary, the pleadings could have been amended, and a tender made; but after waiving any objections as to the sufficiency of the

complaint, and going to trial on an answer putting in issue the merits of the complaint, we think it is too late for the respondent to raise that question here, even if the contention could be sustained.

The judgment will be reversed, and a new trial granted.

FULLERTON, C. J. and HADLEY, ANDERS, and MOUNT, JJ., concur.