[No. 11031.   Department One.   September 6, 1913.]

SCANDINAVIAN AMERICAN BANK, *Respondent*, v.
ALFRED W. LONG, *Appellant*.[1]

WITNESSES—IMPEACHMENT—LAYING FOUNDATION.  A witness by
deposition cannot be impeached by contradictory statements made
in a letter claimed to have been written by him, where it was not
conceded that he wrote the letter and his attention was not called
thereto at the time his deposition was taken; since no sufficient
foundation for the impeachment was laid.

BILLS AND NOTES—STIPULATION—ATTORNEY'S FEES.  Where the
space left in a printed form for a note for inserting the amount of
the attorney's fees was left blank by drawing a pen across the
blank, the note clearly indicates that no attorney's fee is to be al-
lowed.

BILLS AND NOTES—BONA FIDE PURCHASER—EVIDENCE—MATERIAL-
ITY.  Upon an issue as to whether the payee of a note explained
upon negotiating it that it would be contested, it is immaterial how
or why the explanation came to be given.

Appeal from a judgment of the superior court for Lincoln
county, Baske, J., entered September 30, 1912, upon the
verdict of a jury rendered in favor of the plaintiff, in an ac-
tion on contract.   Reversed.

*Martin & Wilson*, for appellant.

MOUNT, J.—Plaintiff brought this action to recover on a
promissory note for $500, claiming to be an innocent pur-
chaser.   The defense was made that the note was without
consideration, and that the plaintiff took the note with notice
of its defects.   The cause was tried to the court and a jury.
A verdict was returned in favor of the plaintiff for the face
of the note and an attorney's fee of $75.   Judgment was
thereafter entered upon the verdict.   The defendant has ap-
pealed.

The respondent has made no appearance in the case.   It
is therefore necessary for us to consider the appeal upon the

[1]Reported in 134 Pac 913.

brief of the appellant and the record.   Several errors are assigned by the appellant, but we shall notice only those which we think have merit in them and which may arise upon a new trial.

The note sued upon is as follows:

"$500.                    Spokane, Wash., Jan'y. 26th, 1910.

"Ninety days after date, without grace I promise to pay to the order of J. B. Tuttle, Jr., Five Hundred Dollars in gold coin of the United States of America, of the present standard value, with interest thereon in like gold coin, at the rate of 10 per cent per annum from date until paid, for value received, interest to be paid......and if not so paid, the whole sum of both principal and interest to become immediately due and collectible at the option of the holder of this note.   And in case suit or action is instituted to collect this note, or any portion thereof I promise and agree to pay in addition to the costs and disbursements provided by statute......dollars in like gold coin for attorney's fees in said suit or action.

"Due 4-24th, 1910.                    Alfred W. Long."

The note was made upon a printed form.   At the trial of the case, the payee of the note testified by deposition which had previously been taken in the state of Idaho.   In this deposition, he testified, in substance, that, at the time he negotiated the note at the bank, he explained to the cashier that he thought that Mr. Long would contest the note.   The cashier informed him that, under those circumstances, he would not advance any money upon the note; but that he would let the witness have $250, if he would give a note for that amount and would leave the note in question with the bank as collateral security; the bank agreeing to collect the note and from the amount collected to deduct the amount of the loan.   In rebuttal at the trial, the respondent produced a letter which purported to have been written by the witness, J. B. Tuttle, Jr., and proved by experts that the signature to the letter was like the signature of Mr. Tuttle; and that in their opinion the letter was written by him.   The trial court

thereupon permitted the respondent to read an extract from the letter as follows:

"I have seen Mr. Long several times and he never said anything to me about misrepresentation but, on the contrary, was very nice and sociable. The last time I saw him was last fall."

The avowed purpose of the offer of this extract from the letter was to impeach statements made by the witness in his deposition.. It was not admitted that this was the letter of the witness; the letter was not called to the attention of the witness at the time he gave his deposition; and the only foundation for offering the letter was proof that the signature to the letter was that of the witness. We are satisfied that this was not sufficient foundation for the letter, or any part thereof, to have been received in evidence. In *Brown v. Gillett*, 33 Wash. 264, 74 Pac. 386, in discussing this question, this court said at page 268:

"The rule is well established that, before a witness can be impeached by showing that he has made a statement different from the statement he makes in court, his attention must be called to the statement as nearly as possible by indicating to him the time and place and other circumstances tending to direct his attention to the testimony which is to be contradicted."

After further considering the question, on page 270, the court quoted from *Sloan v. New York Central R. Co.*, 45 N. Y. 125, as follows:

"To lay the foundation for contradiction, it is necessary to ask the witness specifically whether he has made such statements; and the usual and most accurate mode of examining the contradicting witness is to ask the precise question put to the principal witness. Otherwise, hearsay evidence, not strictly contradictory, might be introduced, to the injury of the parties, and in violation of legal rules. But the practice upon this subject must be, to some extent, under the control and discretion of the court. It is important that the jury should understand that such evidence is collateral, and not evidence in chief; and the witness sought thus to be im-

peached should have an opportunity of making explanation, in order that it may be seen whether there is a serious conflict, or only a misunderstanding or misapprehension; and for the purpose of eliciting the real truth, the court may vary the strict course of examination."

It was not conceded in this case that the witness wrote the letter. His attention was not called to the matter when his deposition was taken. He may have had a sufficient explanation thereof. And we are satisfied that it was error for the trial court to receive a part of the letter in evidence. This evidence was the turning point in the case upon the question whether or not the bank, at the time it took the note in question, was notified of defects in the note, or was sufficiently informed of defects to put the bank upon inquiry as to its validity. We think, therefore, that this evidence was inadmissible, and its admission was reversible error.

It is also contended by the appellant that the court erred in instructing the jury that, if they found in favor of the respondent, they should find a reasonable attorney's fee. It will be noticed that the note provides that, in case suit or action is instituted, the maker promises and agrees to pay in addition to the costs and disbursements provided by statute, blank dollars as attorney's fees. The statute provides, Rem. & Bal. Code, § 474 (P. C. 81 § 1277):

"The measure and mode of compensation of attorneys and counselors shall be left to the agreement, expressed or implied, of the parties . . ."

We think it was clearly the intention of the parties in this note to provide for no attorney's fee, because the space left for the amount of the attorney's fee, whether a reasonable or fixed sum, was left blank by drawing the pen across the blank. The clear indication from the note itself is that no attorney's fee was to be allowed. We think the court was, therefore, in error in instructing the jury that an attorney's fee might be allowed upon the note.

When the payee of the note was giving his deposition, he

was asked the question: "Q. How did you come to explain to the bank that you thought the note would be contested?" The court sustained an objection to this question. This was no doubt correct, because it was entirely immaterial how the witness came to explain that the note would be contested. It was sufficient that he did explain it, and his reason therefor was entirely immaterial.

The appellant also complains that the court erred in refusing to grant a new trial by reason of the misconduct of the jury. In all probability this question will not arise upon a new trial, and it is therefore unnecessary to pass upon it at this time.

For the errors heretofore considered, the judgment is reversed, and the cause remanded for a new trial.

CROW, C. J., PARKER, GOSE, and CHADWICK, JJ., concur.